# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASSOCIATES IN MEDICAL TOXICOLOGY, PC, *et al.*, | |
| Plaintiffs, | |
| v. | Case No: 1:19-cv-01753-YK |
| EMOGENE RENEA SNYDER, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER**

I.      INTRODUCTION

Throughout this litigation, Defendants have accused Plaintiffs of harassing Snyder—a narrative that is inherently false and deflects from reality.  As much as Defendants want to believe that Snyder is the victim in this case, she is simply not.  Snyder has done everything in her power to destroy Dr. Moore's business and reputation, and has made defamatory remarks against Dr. Moore in filings before this Court and to a number of individuals and entities outside of these proceedings, including to any number of regulatory bodies in an effort to have Dr. Moore lose his medical license and/or his credentialing.  Unless Snyder acknowledges that her defamatory remarks are false, Plaintiffs have no other choice but to prove the falsity of her statements.  Defendants may call Plaintiffs' efforts "sling[ing] mud", *see* Def. Cross-Motion, at 6 [Doc. 85], but Plaintiffs' request for these medical records is simply due diligence.[1]

Plaintiffs filed their Motion to seek leave to serve subpoenas upon Snyder's physicians to obtain certain limited medical records which are directly relevant to this case.  Plaintiffs have no interest in delving into Snyder's medical records and would prefer if they did not need to do so.  However, Snyder has falsely claimed that Dr. Moore infected her with a sexually transmitted disease ("STD") and that Dr. Moore has taken prescription medications which he prescribed for Snyder.  *See* paras. 52 and 54(gg) of Def. Answer [Doc. No. 17].  Snyder made these allegations prior to the commencement of this lawsuit and in her filings in this Court, and she continues to repeat these allegations to anybody who would listen.  If Defendants will not acknowledge the falsity of Snyder's statements (and Plaintiffs afforded them the opportunity to do so), Plaintiffs

---

[1] I would like to note for the Court that I pride myself on my integrity and professionalism and have always strived to treat opposing parties and counsel with dignity and respect.  In the more than 30 years of practicing law, I never have and would never harass another party or "sling mud".

are required to prove their falsity. The source and timing of Snyder's Sexually Transmitted Disease ("STD"), as well as her prescription medication history constitute a potential defense to the Defendants' allegations. Plaintiffs' subpoenas are notably narrowly drawn, both as to the scope of the medical records requested and the time period of the requests, and do not request the entirety of Snyder's medical records. These limited medical records are also relevant to defamatory statements Snyder made against Dr. Moore as alleged in Plaintiff's Complaint at paragraphs 54 gg and 110- 114, inclusive. Finally, they go directly to Snyder's credibility.

Therefore, Plaintiffs respectfully request leave to serve the subpoenas on Snyder's physicians and that the Court deny Defendants' cross-motion for a protective order.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On July 2, 2020, Counsel for Plaintiffs sent correspondence to Counsel for Defendants in an effort to confer with them prior to serving any physician subpoenas and to resolve any potential discovery dispute without Court intervention. Counsel for Defendants, however, did not respond to Counsel for Plaintiffs, but instead immediately reached out to the Court requesting an emergency conference [Doc. No. 58]. Counsel for Plaintiffs' responded to this letter on July 3, 2020, indicating that Plaintiffs would seek leave from the Court to serve the subpoenas upon Snyder's physicians and that there was no need to conduct an emergency conference since there was no emergency [Doc. No. 59]. The Court denied Counsel for Defendants' request for an emergency conference, on July 6, 2020 [Doc. No. 60].

On the same date, despite that Counsel for Plaintiffs had offered in their July 3rd letter to file a Motion and Memorandum in Support of the Motion, to which Counsel for Defendants are entitled under the procedural rules to respond, Counsel for Defendants sent correspondence to Counsel for Plaintiffs requesting that they be notified of Plaintiffs' intention to serve the

3

subpoenas, so that Defendants could file a Motion to Quash with the Court. Because it did not appear from either correspondence from Counsel for Defendants that Defendants have any interest in resolving this discovery dispute without Court intervention, Plaintiffs filed their Motion for leave to serve the subpoenas upon Snyder's physicians. In response, Defendants opposed Plaintiffs' motion and filed a cross-motion for a protective order on October 14, 2020 [Doc. Nos. 83, 84 and 85].

As previously stated, Plaintiffs have no desire to delve into Ms. Snyder's personal medical history of STDs; however, Ms. Snyder has made this clearly defamatory allegation requiring Plaintiff to prove its falsity. If Ms. Snyder had the STD prior to becoming involved with Dr. Moore, then she clearly did not receive it from Dr. Moore. If Ms. Snyder were willing to either: 1) acknowledge by binding stipulation that her prior statements about obtaining an STD from Dr. Moore were false; 2) acknowledge by binding stipulation that she did not receive an STD from Dr. Moore; or 3) acknowledge that she had an STD before meeting Dr. Moore, then there would be no need for these records. However, Ms. Snyder appears to be unwilling to acknowledge the falsity of her statements thereby requiring Plaintiff to seek these records.

### 1. Applicable Law

The Federal Rules of Civil Procedure explicitly authorize this Court to allow discovery against persons who are not parties to litigation. The Court may issue a subpoena requiring **any person** to "attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises". Fed. R. Civ. P. 45(a)(1)(A). The subpoena power of the Court is not limited to parties; in fact, the rules specifically describe the limits on subpoenas directed to **any person**, including non-parties. Fed. R. Civ. P. 45(a). Third-party subpoenas are authorized subject to the protections described in Rule 45(d)(1) and (2) of the Federal Rules of Civil Procedure, and non-

parties are provided the right to move to quash or modify a subpoena. Fed. R. Civ. P. 45(D)(3)[2]. The scope of discovery within the subpoena power of the Court under Rule 45 of the Federal Rules of Civil Procedure—whether of parties or non-parties—is generally described and limited by Rule 26 of the Federal Rules of Civil Procedure, which permits broad discovery. *See, e.g., Katz v. Nat'l Bd. of Med. Examiners*, Civil Case No. 3:15-CV-01187, Mem. (M.D. Pa. May 10, 2016).  While under Rule 26 of the Federal Rules of Civil Procedure the scope of discovery is broad, "[p]arties may obtain discovery regarding <u>any non-privileged matter</u> that is <u>relevant to any party's claim or defense</u> and proportional to the needs of the case". Fed. R. Civ. P. 26(b) (Emphasis added).

      Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably lead to other matters that could bear on, any issue that is or may be in the case." *Thomas v. Lawler*, Civil No. 1:CV-10-2437, at *3 (M.D. Pa. March 11, 2013) (*quoting Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).  The burden is upon the party objecting to discovery to state the grounds for the objection with specificity. Fed. R. Civ. P. 33(b)(4).  The Rule 26 relevance standard depends upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996).  "[C]ourts have construed this rule liberally, creating a broad vista for discovery." E.E.O.C. v. Princeton Healthcare Sys., 2012 WL 1623870 (D.N.J. May 9, 2012).

---

[2] Counsel for Defendants appear to want to control Plaintiffs' discovery in this case as evidenced by counsels' repeated objections to the third-party subpoena issued by Plaintiffs to Capital BlueCross, a former employer of Snyder, on similar grounds of lack of relevance, over-reaching and privacy.  Counsel for Defendant's objections were overruled and Counsel for Plaintiffs are permitted to serve a subpoena on Capital BlueCross, subject to a Stipulated Protective Order, which was entered on July 31, 2020.

Furthermore, a party, in contrast to the entity to whom the third party subpoena *duces tecum* is directed, only has standing to object to production of documents containing privileged or other protected matter; it does not have standing to raise objections based upon relevancy, undue burden or the alleged broadness of the document request. 9A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 2459 (1995) ("A motion to quash, or for a protective order, should be made by the person from whom the documents or things are requested. Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought"); *see also, e.g., EEOC v. Danka Industries, Inc.*, 990 F. Supp. 1138, 1141 (E.D. Mo. 1997); *Brown v. Braddick*, 595 F. 2d 961, 967 (5th Cir. 1979); *QC Holdings, Inc. v. Diedrich*, 2002 WL 334281 (D. Kan. 2002). Contrary to Defendant's assertion, no such personal right or privilege exists with respect to the narrowly drawn subpoenas directed to Snyder's physicians.

### 2. Plaintiffs' Subpoenas are Relevant and Proportional to the Needs of the Case.

Defendants do not have standing to contest the subpoena on the grounds of relevancy because the subpoenas are directed to third-party entities. *See EEOC*, 990 F. Supp. at 1141; *Brown*, 595 F. 2d at 967; *QC Holdings, Inc.*, 2002 WL 334281.

Nevertheless, the third-party physician subpoenas in this case are relevant and proportional to the needs of the case as more fully discussed in Plaintiffs' Motion for leave to serve the subpoenas which Plaintiffs fully incorporate herein [Doc. No. 76]. *See also Katz v. Nat'l Bd. of Med. Examiners*, Civil Case No. 3:15-CV-01187, Mem. (M.D. Pa. May 10, 2016) (plaintiff placed his physical and mental condition at issue in the case); *Manning v. Herman,* Civil Case No. 1:13-CV-01426, Mem. (M.D. Pa. Sept. 14, 2016) (Court denied plaintiff's motion

to quash where defendants served subpoenas upon non-party physicians seeking medical records, because "the Plaintiff put his medical condition at the heart of [the] case"); *Botey v. Green,* Case No. 3:12-CV-1520, Mem. Op. (M.D. Pa. Nov. 14, 2015) (Plaintiff filed a complaint alleging negligence against the defendant as a result of a car accident between the parties. This Court ordered the defendant to produce any of his dementia or neurologically-related medical records, finding that these records were discoverable).

In their Cross-Motion, Defendants claim that Plaintiffs solely rely on Snyder's averment in Defendants' *pro se* answer to Plaintiffs' Complaint as justification to pursue Snyder's health records. *See* Def. Cross-Motion, at 7. That is incorrect. Snyder's medical records are not only placed at issue by both her *pro se* answer and her amended answer, filed by Counsel, they are central to the Plaintiffs' claims that Snyder defamed him by publicly asserting that he gave her an STD and by her allegations that he, as a physician, unlawfully prescribed medications for his personal use by way of prescriptions for her. These are claims she has made repeatedly, including in her Answer, and which she continues to repeat publicly and in communications with other individuals, including Dr. Moore's patients, and even in unrelated state court proceedings. *See* Answer, para. 54(gg).

### 3. Plaintiffs' Subpoenas are Not Privileged.

The party seeking to claim privilege holds the burden of proof. *Matter of Bevill, Bressler & Schulman Asset Management Corp.,* 805 F.2d 120, 123 (3rd Cir. 1986). Defendants refer to averments in judicial proceedings, the physician-patient privilege, and a conditional privilege to report on recognize matters of public interest.

As stated above, Snyder's false allegations that Dr. Moore infected her with an STD and Dr. Moore has taken prescription medication which he prescribed for Snyder are claims she has made repeatedly, including in her Answer, and which she continues to repeat publicly and in

7

communications with other individuals, including Dr. Moore's patients, and even in unrelated state court proceedings.

Any physician-patient privilege that might have existed between Snyder and her physicians has been waived by Snyder's placement of her physical condition and medication prescription history at issue in this case. *See Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127, 130 (E.D. Pa. 1997); *see also Topol v. Tr. of Univ. of Pa.*, 160 F.R.D. 476, 477 (E.D. Pa. 1995). "[A] party cannot inject [her] treatment, conditions or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues." *Katz*, Case No. 3:15-CV-01187 (*citing Adams v. Ardcor*, 196 F.R.D. 339, 343 (E.D. Wis. 2000). "[A]llowing a plaintiff to hide . . . behind a claim of privilege when that condition is placed directly at issue in a case would simply be contrary to the most basic sense of fairness and justice." *Sarko*, 170 F.R.D. at 130.

Furthermore, Defendants cite to a Pennsylvania Superior Court case for their proposition that Snyder held a conditional privilege regarding an issue of public interest. *See* Def. Cross-Motion, at 10. In that case, a social worker was tasked by a non-profit service agency to perform a psychosexual evaluation of the plaintiff's daughter and issue a report. The plaintiff then filed suit against the social worker for defamation related to averments the social worker made in her confidential memorandum. The Superior Court in that case explained, and Defendants neglect to mention, that only "[c]ommunications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause are privileged. *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1268 (Pa. Super. Ct. 2005) (citing *Miketic v. Baron*, 450 Pa. Super. 91, 675 A.2d 324, 329 (1996)). Snyder's defamatory remarks made to Pinnacle, which she repeated publicly and in communications with other individuals, were not only dishonest and

lacked any reasonable cause but were also made solely to destroy Dr. Moore's business and reputation. The evidence in this case proves Snyder's nefarious motives, but Defendants simply choose to ignore it and pretend that Snyder made reports to protect the public from a physician who has demonstrably dedicated his professional life to helping the underserved communities in the Harrisburg area.

It is also noteworthy that any medical information produced in response to the third party subpoenas will be received by Plaintiffs' Counsel, subject to a Stipulated Order of Confidentiality as Ordered by Magistrate Judge Saporito [Doc. Nos. 54 and 57], so any concern about confidentiality is moot.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs have demonstrated that the issuance of the subpoenas upon Snyder's physicians to obtain certain medical records related to Snyder's medication prescription history and diagnoses regarding sexually transmitted diseases is reasonable and necessary in this case. Therefore, Plaintiffs respectfully request that their Motion for Leave to Serve Subpoenas upon Snyder's physicians be granted and that Defendants' Cross-Motion for a protective order be denied.

Dated:  October 21, 2020                              Respectfully submitted,

*/s/Dennis E. Boyle*
Dennis E. Boyle (PA#49618)
Blerina Jasari (Admitted *pro hac vice*)
Berliner, Corcoran & Rowe L.L.P.
1101 Seventeenth Street, N.W., Suite 1100
Washington, DC 20036
Telephone: (202) 293-5555
Email:  dboyle@bcr-dc.com
              bjasari@bcr-dc.com

*/s/Kathleen Misturak-Gingrich*
Kathleen Misturak-Gingrich (PA#41682)

9

                                             Law Offices of Peter J. Russo, P.C.
                                             245 Grandview Avenue, Suite 102
                                             Camp Hill, PA  17011
                                             Telephone: (717) 591-1755
                                             Email: kgingrich@pjrlaw.com

*Counsel for Plaintiffs*